THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States of America          )
                                  )
          Plaintiff,              )
                                  )      Case No. 07 C 0895
                                  )          07 C 0895
     v.                           )      Magistrate Judge
                                  )      Arlander Keys
                                  )
ROBERT F. SCHAUDT, JOANN          )
SCHAUDT, ROBERT F. SCHAUDT        )
and WILLIAM F. SCHAUDT,           )
as co-trustees of the            )
William G. Schaudt & Evelyn M.    )
Schaudt Family Trust,             )
                                  )
          Defendants.             )

## MEMORANDUM OPINION AND ORDER

This action was instituted by the United States of America,
against Defendants for unpaid taxes. Currently before the Court
are both Defendants' Motion For Summary Judgment and Plaintiff's
Cross-Motion For Summary Judgment, filed pursuant to Federal Rule
of Civil Procedure 56. For the reasons set forth below,
Defendants' motion is denied, except as to William E. Schaudt,
and Plaintiff's cross-motion is granted in part and denied in
part.

### FACTUAL & PROCEDURAL BACKGROUND

On or about December 26, 1986, the parents of Robert F.
Schaudt, William G. and Evelyn M. Schaudt, formed The William G.
and Evelyn M. Schaudt Family Trust (the "Schaudt Family Trust")

and appointed themselves as co-trustees. Under the terms of the trust, real property located at 2283 Brentwood Road, Northbrook, Illinois, was to be held in trust, and upon the death of the last surviving trustee, William G. Schaudt or Evelyn M. Schaudt, the Northbrook property would be distributed to their son, Robert F. Schaudt ("Robert")[1]. (Def.'s Ex. 6, p. 16). In addition, the Trust instrument also provided that, upon the death of the last surviving trustee, Robert and his brother, William E. Schaudt[2], would be appointed co-trustees of the Schaudt Family Trust. *Id.* Robert and his wife Joann Schaudt ("Joann"), resided in the Northbrook property from at least 1979 and continued to live there after the passing of both his parents (William G. Schaudt died on May 8, 1994, and Evelyn M. Schaudt died on May 1, 1996). In addition, while Robert and Joann resided at the Northbrook property, Robert's brother, William E. Schaudt, resigned as co-trustee on approximately July 10, 1996. However, after residing in the property together for many years, Joann Schaudt filed for

---

[1]Because there are several parties with the sur name "Schaudt", in order to avoid confusion, the Court will refer to the parties in this case by their given names.

[2]The Court notes that there appears to be some confusion regarding the middle initial of William Schaudt, the brother of Robert F. Schaudt; therefore, although in some of the defendants' pleadings they have represented his middle initial to be "F", the Court will refer to him as "William E. Schaudt", as written in the initial pleadings of the parties (the complaint and answer), and as in other reliable documents, such as, "The William G. And Evelyn M. Schaudt Family Trust".

2

divorce, and less than three weeks later, on December 5, 2005, a Judgment for Dissolution of Marriage was entered in Cook County.

The Judgment for Dissolution of Marriage incorporated a "Marital Settlement Agreement," under which Robert was to pay Joann Schaudt, monthly maintenance payments of $8,000, and Robert was to quitclaim the Northbrook Property to Joann Schaudt.[3] Pl.'s Ex. 1, Part. 2, p. 6, 8. Among various other items, the agreement also named "Zeus Concepts LLC" ("Zeus Concepts"), giving Robert all right, title and interest to the company, and absolved Joann of liability for all debts and liabilities associated with that business.[4] *Id.* at 9. After gaining title to the Northbrook Property, on May 31, 2006, Joann purchased another property located in Antioch, Illinois, by executing a mortgage against the Northbrook Property, in which she currently resides.

It appears, however, that during their marriage and after,

---

[3]Under section 4.3 of the Marital Settlement Agreement, entitled "Marital Residence", it states that Mr. Schaudt represented that his brother had conveyed to him all right, title and interest in the Northbrook Property in trust; hence, Mr. Schaudt agreed to record the quit claim deed provided to him by his brother and provide a fully executed quit claim conveying all right, title and interest in Northbrook to Joann Schaudt. Pl.'s Ex. 1, Part. 2, p. 9. Subsequently, on December 20, 2006, Mr. Schaudt, individually, and as Co-trustee of the Schaudt Family Trust, quit claimed the Northbrook Property to Joann Schaudt.

[4]It appears that, for some period of time (which is in dispute) after his divorce from Joann, Robert continued to reside at the Northbrook Property.

3

Robert had failed to pay numerous tax assessments made against him. From 1996 to 2006, the IRS made several assessments against Robert for unpaid federal taxes, both personally and as the owner of Zeus Concepts.[5]

The United States of America (hereinafter the "government" or the "IRS"), by its attorney, Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, filed a complaint on February 15, 2007 against Robert F. Schaudt, Joann Schaudt, Robert F. Schaudt and William E. Schaudt as co-trustees of the William G. Schaudt & Evelyn M. Schaudt Family Trust, (collectively the "defendants"), seeking to recover unpaid federal taxes in the amount of $585,267.04. The complaint

---

[5]The jurisdiction of this Court is not an issue in the case as the defendants argue, because the taxes owed relating to Zeus Concepts was assessed against Robert himself as the sole proprietor of the company (who had the duty to see to it that the funds were remitted to the government) and not against the company itself. 26 U.S.C. § 6672 provides that, "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." The term "person" under section 6672 includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs. 26 U.S.C. § 6671(b); see also Monday v. United States, 421 F.2d 1210, 1218 (7th Cir. 1970) ("personal liability imposed upon the individual taxpayer by section 6672 is separate and distinct from that imposed upon the [company] under Section 3403 of the Code", which holds an employer liable for the payment of the tax required to be deducted and withheld.)

4

alleged that, between 1997 and 2006, several Notices of Federal Tax Liens were recorded with the Cook County Recorder of Deeds, pertaining to Robert's tax liabilities in the name of Robert F. Schaudt and the William G. and Evelyn M. Schaudt Family Trust, as nominee of Robert F. Schaudt.

The government seeks the following forms of relief: (1) to reduce to judgment assessments made against Robert F. Schaudt, for unpaid income taxes, employment taxes, unemployment taxes, a civil penalty, and a trust fund recovery penalty; (2) to foreclose federal tax liens against interests held by Robert F. Schaudt or his nominee Joann Schaudt in two parcels of real property, with one located in Northbrook, Illinois (the "Northbrook property") and the other in Antioch, Illinois (the "Antioch property"); (3) to deem Robert F. Schaudt's conveyance of the Northbrook property to Joann Schaudt as fraudulent and consequently set it aside; (4) to obtain a money judgment against Joan Schaudt, as transferee, for the value of the Northbrook property; and finally (5) to establish that Joann Schaudt was unjustly enriched to the detriment of the United States, via the "fraudulent" transfer by Robert F. Schaudt and to impose a constructive trust in favor of the United States.

## STANDARD OF REVIEW

Summary judgment will be granted where the pleadings and supporting documents show that there is no genuine issue as to

5

any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P 56(c); *Lewis v. City of Chicago et al*, 496 F.3d 645, 650 (7th Cir. 2007). Whether a fact is material to the dispute is established by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue as to one of these material facts exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

In a summary judgment proceeding, the Court will disregard all facts not properly supported by the record. *Brasic v. Heinemann's, Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). Additionally, at this juncture, it is not the role of the Court to make "credibility determinations nor choose between competing inferences." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993); *See also Paz v. Wauconda Healthcare and Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006). However, in determining whether a genuine issue of material fact exists, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999). In addition, the moving party initially bears the burden of showing that no genuine issue of material fact exists in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1985). On the other hand, if the moving party meets

6

it's burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial, and the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading . . . ." *Anderson*, 477 U.S. at 257.

In addition to adhering to Rule 56 of the Federal Rules of Civil Procedure, parties must be in strict compliance with Northern District of Illinois Local Rule 56.1. Under Local Rule 56.1, the party moving for summary judgment must submit a statement of material facts, written in short numbered paragraphs, along with citations to admissible evidence. Loc. R. 56.1(a); *Smith v. Lamz*, 321 F.3d 680, 682 (7th Cir. 2003). The opposing party must respond to each paragraph by either admitting or denying the allegations, and specifically citing to supporting materials showing the existence of a genuine factual dispute. Loc. R. 56.1(b)(3)(A). The parties must support all disputed facts with "specific references to . . . parts of the record." Courts need not "scour the record in an attempt to locate the relevant information supporting the Rule 56.1 claims. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). The Seventh Circuit has repeatedly "sustained the entry of summary judgment when the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." *Id.; see*

7

*also Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871
(7th Cir. 2000) (All relevant facts denied without supporting
documentation must be accepted as true provided the facts are
"properly supported by references to the record or other
evidentiary materials.") If the party opposing summary judgment
fails to identify supporting material in the record, the moving
party's statements will be deemed admitted, assuming these
statements are properly supported in the record. Loc. R.
56.1(b)(3(B); *Garrison v. Burke*, 165 F.3d 565, 567 (7th Cir.
1999).

### DISCUSSION

The government claims that Robert's transfer of the
Northbrook Property to Joann amounted to fraud under Illinois
state law, and therefore, should be set aside, allowing the
government to foreclose on the property and recoup unpaid taxes
owed by Robert. The government also argues that, irrespective of
whether the transfer of the Northbrook Property to Joann was
fraudulent, the federal taxes assessed against Robert attached to
the Northbrook Property at the time they were assessed, and not
when the notices of the liens were filed; hence, those liens
assessed prior to the transfer to Joann take priority over any
interest Joann may have. The defendants naturally argue the
opposite -- that the transfer of the property to Joann did not
amount to fraud under Illinois law and that any taxes assessed by

8

the government, but not filed in accordance with Illinois state
law before the transfer to Joann, are inferior to Joann's claim
to the Northbrook Property. The Court will consider these
arguments in turn, but will first address the issue of William E.
Schaudt, named as a defendant in this case.

## 1. Claim against William E. Schaudt

In it's original filing of the complaint, the government
named William E. Schaudt, as co-trustee of the Schaudt Family
Trust, a defendant in this case. However, it appears that the
government now concedes that William E. Schaudt resigned as co-
trustee of the above trust prior to the events that have given
rise to this motion for summary judgment. (See Pl.'s Resp. at
12). Therefore, summary judgment is granted in favor of William
E. Schaudt, dismissing him as a party to this case. The request
for an award of costs to William E. Schaudt is denied.

## 2. Fraudulent Transfer Theory Under Illinois Law

The government seeks to set aside the transfer of the
Northbrook Property to Joann as fraudulent pursuant to two
theories under the Illinois Uniform Fraudulent Transfer Act
("UFTA"). The UFTA "protects against two kinds of fraudulent
transfers: transfers with an actual intent to defraud and
transfers which the law considers fraudulent (i.e., constructive
fraud or fraud in law)." *General Elec. Capital Corp. v. Lease
Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). In this

9

case, in order to prove actual intent to defraud under the UFTA, the government must show that the transfer was made with the intent to hinder, delay, or defraud the IRS, or that Robert failed to receive reasonably equivalent value in exchange for the transfer to Joann. In determining actual intent, the fact-finder may consider, among other things, whether, (1) the transfer or obligation was disclosed or concealed; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer was substantially all the debtor's assets; (4) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; and (5) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. 740 ILL.COMP.STAT. 160/5(a)(1).

In order to make a determination under this theory, the Court would need to consider material facts that are currently in dispute, and would then need to make certain factual determinations. For example, it is hotly contested whether the value of the consideration received by Robert was reasonably equivalent to the value of the asset transferred under the marital settlement agreement and whether Robert retained possession or control of the Northbrook Property after it was transferred to Joann. These sort of fact-based inquiries should be left for the finder-of-fact and the Court declines to make

those determinations here.

The government also seeks recovery under a fraud in law theory, in which it must prove four elements: (1) the debtor made a voluntary transfer; (2) at the time of the transfer, the debtor incurred obligations elsewhere; (3) the debtor received less than a reasonably equivalent value for the transfer; and (4) after the transfer, the debtor did not retain sufficient property to pay for his indebtedness. *General Elec. Capital Corp.*, 128 F.3d at 1079. Central to this claim is whether Robert received reasonably equivalent value for the transfer of the Northbrook Property. As explained above, the parties take opposite positions; the government, of course, argues that Robert failed to receive reasonably equivalent value and the defendants argue that he did. Additionally, the actual value of Zeus Concepts itself remains in dispute. The Court finds this to be a factual determination that cannot be properly handled through summary judgment.[6]

## 3. **Property Rights Under Federal Tax Statute**

The Schaudts claim that Robert did not hold title to the

---

[6]The Court notes that although the government failed, and is now precluded, to offer expert testimony to rebut those of the defendants' who has put forth an estimated worth of Zeus Concepts (which is what Robert received by way of the marital settlement agreement), that does not preclude the government from offering other evidence to counter those claims, as the defendants suggest. Hence, there remains a genuine dispute as to whether Robert received reasonably equivalent value in exchange for his transfer of the Northbrook Property to Joann.

11

Northbrook Property when the tax liens against Robert were assessed, an argument they claim is furthered by the fact that no title to the property was recorded with the Recorder of Deeds under Illinois law, which would evidence Robert's right to title. They claim, therefore, that the government's liens could not attach to the Northbrook Property prior to the transfer to Joann on December 20, 2005. The defendants also argue that, because the government failed to file notice of the assessed liens against Robert, they could not attach to the property, and therefore, they are not superior to Joann's interest. The government, on the other hand, argues that the federal tax liens assessed against Robert Schaudt existed upon their date of assessment, and not upon the filing of Notices of Federal Tax Liens. Further, the government argues that the reason the IRS files Notices of Federal Tax Liens is so that the underlying tax liens listed in such notices can take priority over purchasers, holders of security interests, mechanics lienors, and judgment lien creditors who might otherwise claim an interest in the property to which the federal tax liens have been assessed against. Otherwise, the government argues, federal tax liens take priority over all other interested parties who might claim an interest in the property regardless of whether such parties had notice. The Court agrees with the government on the issue.

Under Section 6321 of the Internal Revenue Code (the "IRC"),

"[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon *all property and rights to property*, whether real or personal, belonging to such person." (Emphasis added). In other words, if a taxpayer has a right to property and fails to pay any tax as assessed against him or her, a lien may be placed on that property right in favor of the United States. However, the Court must look to state law in order to determine whether one has a right to property. *See Aquilino v. United States*, 363 U.S. 509, 513 (1960)(quoting *Morgan v. Commissioner*, 309 U.S. 78, 82 (1940)).

Under Illinois state law, a trustee holds "legal title" to items under a trust, while a beneficiary under a trust holds "equitable title". *In re Estate of Mendelson*, 298 Ill.App.3d 1, 3, 697 N.E.2d 1210, 232 Ill.Dec. 280 (1998)("In a conventional trust, the trustee holds the legal title and the beneficiary holds the equitable title.")(citing *Parkway Bank & Trust Co. v. Northern Trust Co.*, 213 Ill.App.3d 444, 448, 157 Ill.Dec. 591, 572 N.E.2d 1055 (1991)). In the present case, the Schaudt Family Trust, created on December 29, 1986, called for the distribution of the Northbrook Property to Robert upon the death of the survivor of his parents. The trust also named him and his brother as trustee, upon the death of his last surviving parent. Hence, under the terms of the trust, before the death of his

13

mother on May 1, 1996 (his last surviving parent), Robert held an equitable right to the Northbrook Property as a beneficiary under the trust, and thereafter, held legal title to the property as trustee (both as co-trustee with his brother, and as sole trustee after his brother's resignation on July 10, 1996).[7]

While the initial inquiry of what rights a taxpayer has in specific property is one of state law, after that determination is made, "state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States." *Drye, Jr., et al v. United States*, 528 U.S. 49, 52 (1999); *see also United States v. National Bank of Commerce*, 472 U.S. 713, 727 (1985)(citing *United States v. Bess*, 357 U.S. 51, 56-57 (1958)). Rather, it is federal law that determines whether a state-law right to property, constitutes "property" or "rights to property" that can be levied upon to recoup unpaid taxes.

The law is clear; "in determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to

---

[7]Although the parties disagree as to whether, under the terms of the trust, Robert's interest in the Northbrook property vested on May 1, 1996, or whether further action needed to be taken in order for Robert to hold title to the property, the Court does not find this contention material. It is clear that, if the property vested automatically on May 1, 1996, Robert thereafter had property. Likewise, if further action was required in order for Robert to take title to the property under the trust, then he remained a beneficiary until such action was taken, and hence, had a right to property under the law. Therefore, under both scenarios, Robert had rights to the Northbrook Property under Illinois state law.

14

property,' '[t]he important consideration is the breadth of the control the [taxpayer] could exercise over the property." *Drye v. United States*, 528 U.S. 49, 61 (1999) (citing *Morgan v. Commissioner*, 309 U.S. 78, 83 (1940)). Under Illinois law, Robert, as beneficiary under the trust, could alienate, assign or transfer his interest and could even sell or mortgage it. *See* 35 Ill. Law and Prac. Trust § 65. Hence, it is clear that Robert's right as beneficiary is "property" under federal law. Additionally, if Robert's right to the Northbrook Property vested immediately upon the death of his last surviving parent, this clearly would be considered property under federal law.

Section 6331(a) of the IRC provides that, "[i]f any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax . . . by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." However, that lien attaches to the property on the date the unpaid taxes are assessed, as the Code provides that "[u]nless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . . is satisfied or becomes unenforceable by reason of lapse of

15

time." 26 U.S.C. § 6322. The Supreme Court has held the language in sections 6321 and 6331(a) to be broad as it "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *Drye*, 528 U.S. at 56 (citing *United States v. National Bank of Commerce*, 472 U.S. 713, 719-720 (1985)); *see also Glass City Bank v. United States*, 326 U.S. 265, 267 (1945) ("Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes.") The Supreme Court has further expressed that Congress' broad use of the term "property" reveals the Legislature's aim to reach "'every species of right or interest protected by the law and having an exchangeable value'." *Drye*, 528 U.S. at 56.

It is clear that Robert's equitable interest in the Northbrook Property qualifies as "property" under federal law, as the Supreme Court has unequivocally held that, without question, the federal tax lien statute reaches equitable interests owned for the benefit of the taxpayer. *United States v. Towne*, 406 F.Supp.2d 928, 937 (N.D. Ill. 2005). While the parties disagree as to whether, under the terms of the trust, the Northbrook Property transferred immediately to Robert upon his mother's death on May 1, 2006 or whether more action was required by Robert as beneficiary and as trustee in order for his right to the property to vest, the Court finds it unnecessary to consider this inquiry. Whether Robert acquired title to the Northbrook

16

Property on the date of the death of his last surviving parent or whether he continued to be a beneficiary under the trust (as the defendants appear to be arguing), under both scenarios, Robert had a property interest which the government could levy upon, and any lien the government had pertaining to the taxes assessed against Robert Schaudt, attached to the Northbrook Property on the day the assessments were made.

Section 6334(a) further supports Congress' intent to reach all property interests as it lists property exempt from levy. The list includes 13 categories of exemptions, including, necessary "wearing apparel" and school books and books and tools necessary for trade, business, or profession. There is no doubt, however, that the enumeration contained in Section 6334(a) is exclusive, as subsection (c) of section 6334 states that, "[notwithstanding any other law of the United States, no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)." However, the IRS must be mindful that a lien imposed by section 6321 will not be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice of the lien (meeting the requirements of the Code) has been filed by the Secretary. 26 U.S.C. § 6323(a).

In this case, the Northbrook property was transferred to a third party, however, that person happens to be Robert's wife,

17

Joann, who gained rights to the property pursuant to the terms of a marital settlement agreement, arising out of divorce proceedings between the two. Hence, she is not a purchaser, holder of a security interest, mechanic lienor, nor a judgment lien creditor that would be protected against any tax lien imposed by the assessment of unpaid taxes, that has not been filed by the Secretary. In other words, the government was not required to file a notice of the assessments made against Robert in order for them to stand up against a subsequent taker of the property, who did not acquire the property through any of the four ways listed above.

Although it is not of much consequence to the finding of this Court thus far, Joann does admit to having had notice of Robert's tax problems as of at least February 24, 2000, as she received a notice from the IRS, finding her to be an innocent spouse relative to the income and federal employment tax liabilities of her then husband, Robert Schaudt, for the tax periods ending prior to 1998. (Aff. of Def. Joann Schaudt, Def.'s Ex. 1, 3:5); *see Application of County Collector*, 48 Ill.App.3d 572, 6 Ill.Dec. 415, 362 N.E.2d 1335 (1977)(One having knowledge of facts which would put a reasonable man on inquiry is chargeable with knowledge of other facts which would have been discovered on diligent inquiry); *see also Villapiano v. Better Brands of Illinois, Inc.*, 26 Ill.App.3d 512, 325 N.E.2d 722

(1975) ("If it appears a party having knowledge or information of facts sufficient to put a prudent man upon inquiry wholly neglects to make any inquiry, the inference of actual notice is necessary and absolute.") The law certainly cannot be interpreted to protect someone who had actual notice of Robert's tax problems, especially not a law that has been written with such painstaking specificity as this one has; clearly denoting who shall be protected from the government's unrecorded tax lien.

Therefore, when Robert transferred title of the property to Joann on December 20, 2005, she took the property subject to the taxes that were assessed against Robert, prior to the date of that transfer. *See Lapp v. United States*, 316 F.Supp. 386, 388 (S.D. Fla. 1970)("This federal tax lien attaches not only to property interests of the taxpayer at the time the lien arises, but attaches instander to all property rights acquired by the taxpayer during the life of the lien.") (citing *Seaboard Surety Co. v. United States*, 306 F.2d 855 (9th Cir. 1962)); *see also Harris v. United States*, 588 F.Supp. 835, 838 (N.D. Texas 1984), aff'd 764 F.3d 1126 (5th Cir. 1985)("[S]ince the federal tax lien attached to the residence prior to the Judgment of Divorce, it takes priority over Plaintiff's interest."); *Lapp*, 316 F.Supp. at 388 ("Once the lien attaches to property of the taxpayer, it follows that property into the hands of any transferee.") (citing *United States v. Bess*, 357 U.S. 51, 78 (1958)). Under these

facts, the government is entitled to foreclose on the Northbrook
Property in order to recoup the taxes owed by Robert (*See United
States v. Denlinger*, 982 F.2d 233, 235 (7th Cir. 1992)). But,
any taxes assessed against Robert after the transfer of the
Northbrook property to Joann (assuming the transfer of the
property was not fraudulent), cannot attach as Robert would have
ceased to have any property interest.

The government is, therefore, entitled to recoup any taxes
assessed against Robert F. Schaudt prior to December 20, 2005
(the date he conveyed the Northbrook Property to Joann Schaudt)
through foreclosure proceedings of the Northbrook Property.[8]

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that
summary judgment be, and the same hereby is, granted in favor of
William E. Schaudt. IT IS FURTHER ORDERED that the government's
cross-motion for summary judgment is granted in part and denied
in part. The motion is granted as to all liens assessed against
Robert F. Schaudt before December 20, 2005, to be satisfied
through the foreclosure sale of the Northbrook Property. The
motion is denied as to any taxes assessed after December 20,

---

[8]The Court notes that the government remains free to pursue
any assessed tax amounts that were assessed prior to the transfer
of the Northbrook Property and any liens that were not perfected
prior to the subsequent mortgagor's perfected interest, under
UFTA, but they cannot be decided through summary judgment, as
already discussed above.

2005. If the government wishes to proceed against the Defendants for taxes assessed after December 20, 2005, pursuant to the UFTA, it may do so, but those claims cannot be resolved on summary judgment. IT IS ALSO ORDERED that Robert F. Schaudt and Joann Schaudt's motion for summary judgment be, and the same hereby is, denied.

DATE: October 8, 2008

E N T E R E D:

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT

21